UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**REPUBLIC BUSINESS CREDIT, LLC**           **CIVIL ACTION**

**v.**                                      **No. 13-5535**

**GREYSTONE & CO., INC. and**               **SECTION "C" (4)**
**GREYSTONE FUNDING CORP.**

### ORDER AND REASONS

Before the Court is the Motion to Dismiss for Lack of Personal Jurisdiction or Improper Venue or in the Alternative to Transfer Venue of defendants Greystone & Company, Inc. ("GreyCo") and Greystone Funding Corporation ("GFC"). Rec. Doc. 3. Plaintiff Republic Business Credit, LLC ("RBC") opposes, requesting a continuance pending jurisdictional discovery. Rec. Doc. 25. The Court, having considered the record, the law, and the memoranda of counsel, hereby DENIES defendants' motion to dismiss.

### I. Background

Either directly or indirectly, this matter arises out of an asset purchase agreement between plaintiff RBC and Greystone Commercial Services, LLP ("GCS"), a non-party, and defendant GFC. Rec. Doc. 1, ¶ IX. Both GCS and RBC do business in the accounts receivable financing or "factoring" industry. *Id.*, ¶ VII. Factoring companies purchase the invoices or accounts receivable of other companies in exchange for an immediate advance on the total amount. Black's Law Dictionary (9th ed. 2009), factoring.

In May 2013, RBC and GCS entered into negotiations for RBC to purchase a portfolio factoring accounts and related assets owned by GCS. Rec. Doc. 1, ¶ VII. According to RBC, GreyCo, which wholly owns GCS, participated in these negotiations on GCS's behalf. *Id.*, ¶

1

XVII; Rec. Doc. 25-1, ¶¶ 11-13. RBC and GCS agreed to terms, and GFC, as GCS's parent company, agreed to serve as its guarantor for the sale. Rec. Doc. 1, ¶ VIII; Rec. Doc. 3-5, § 5.7. By virtue of the agreement, RBC took possession of a Wells Fargo Lockbox Account, into which the factoring customers that RBC acquired in the agreement (or the customers' debtors) deposited payments on the customers' accounts receivable. Rec. Doc. 1, ¶¶ XI-XII. RBC, GCS, and GFC executed the agreement on June 28, 2013, on which date GCS sent Wells Fargo notice of transfer of the Lockbox Account. *Id.*, ¶ XII; Rec. Doc. 3-6.

In July 2013, GCS advised RBC that it claimed certain funds held in the Lockbox Account ($257,157.20) under an excluded assets provision in the asset purchase agreement. Rec. Doc. 1, ¶¶ XIV-XV. RBC advised GCS that it disputed this claim. *Id.*, ¶ XX. Thereafter, Braulio Rodriguez, a GreyCo employee, directed Wells Fargo to close the Lockbox Account and to return all mail, including payments, in the Lockbox Account at that time on behalf of GreyCo and/or GFC. *Id.*, ¶¶ XX-XXI, XXIII. Mr. Rodriguez further instructed that forwarding of any mail sent to the Lockbox Account, including payments, was not necessary. *Id.*, ¶ XXI.

RBC instituted this action on August 22, 2013, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332 and venue pursuant to § 1391(b) of the same title. *Id.*, ¶ II. In it, RBC claims damages for conversion or attempted conversion, intentional interference with contract, and tortious interference with a business relationship. *Id.*, ¶¶ XXXIII-L.

On September 6, 2013, GCS filed a complaint in the Norther District of Texas, alleging breach of contract based on RBC's failure to relinquish the disputed sum in the Lockbox Account. Rec. Doc. 25-2.

On September 18, 2013, defendants GreyCo and GFC moved to dismiss or in the alternative transfer the above-captioned matter for lack of personal jurisdiction and improper venue. Rec. Doc. 3.

## II. Applicable Standards

"Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). Because the Court will decide this motion without the benefit of an evidentiary hearing, plaintiff's burden is to make a *prima facie* showing that jurisdiction is proper. *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir. 2008). Further, in the absence of such a hearing, the Court will "accept as true the uncontroverted allegations of the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits." *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999). The same basic principles apply to consideration of a Rule 12(b)(3) motion to dismiss for improper venue.[1] *See, e.g.*, *Sinners & Saints, L.L.C. v. Noire Blanc Films*, L.L.C., 937 F. Supp. 2d 835, 845 (E.D. La. 2013).

## III. Analysis

A. Personal Jurisdiction

A court sitting in diversity has personal jurisdiction over a nonresident defendant if the forum state's long-arm statute confers personal jurisdiction over that defendant and the application of the statute complies with the Due Process Clause of the Fourteenth Amendment.

---

[1] Authorities in this circuit divide on whether the plaintiff or the defendant bears the burden of proof once a motion to dismiss for improper venue has been raised. *See* 14D Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3826 at 556-57 & nn.22-24 (2007). This Court has taken the position that the plaintiff bears the burden of showing that venue is proper. *See Vaughn Med. Equip. Repair Serv., L.L.C. v. Jordan Reses Supply Co.*, 2010 WL 3488244, at *4 n. 3 (E.D. La. Aug. 26, 2010).

*Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 624 (5th Cir. 1999). Because the Louisiana statute extends personal jurisdiction to its constitutional limits, *see* La. Rev. Stat. 13:3201, the sole inquiry in a Louisiana long-arm case is that compelled by due process. *Id.* Due process requires that "(1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Walk Haydel & Associates, Inc., v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008).

Personal jurisdiction may be either specific or general. Specific jurisdiction arises when a plaintiff's cause of action arises from or is directly related to the defendant's contact with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). General jurisdiction arises where a defendant has continuous and systematic general business contacts with the forum state. *Luv N' Care, Ltd.*, 438 F.3d at 469. "The continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Id.* "Even repeated contacts with the forum residents by a foreign defendant may not meet the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction." *Id.* "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) (citations omitted).

"Once a plaintiff establishes minimum contacts between the defendant and the forum State, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 384 (5th Cir. 2003). "To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case' against it." *Wien Air Alaska, Inc. v.*

*Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). "It is rare to say the assertion is unfair after minimum contacts have been shown." *Id.*

*1. Minimum Contacts*

RBC argues that "[t]his Court has specific jurisdiction over Defendants because these Defendants intentionally aimed their harmful activities at Republic, knowing that their actions would, and in fact did, injure Republic in Louisiana." Rec. Doc. 25 at 5.

After the Supreme Court's opinion in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984), "[e]ven an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Guidry*, 188 F.3d at 628 (citing *Calder*, 465 U.S. at 789-90, 104 S. Ct. at 1486-87). The requirements for jurisdiction under the *Calder* "effects" test are met rarely and only "when a nonresident defendant expressly aims intentionally tortious activity at the forum state and knows that the brunt of the injury will be felt by a forum resident." *Moncrief Oil Int'l Inc.*, 481 F.3d at 314; *DNH, L.L.C. v. In-N-Out Burgers*, 381 F. Supp. 2d 559, 564 (E.D. La. 2005). This requires more than foreseeability that the actions will effect the forum state. *Guidry*, 188 F.3d at 630; *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999). Further, the cases make clear that "the plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*." *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002).

*Calder* involved a libel action brought by the plaintiff, a television actress, against the defendants, a reporter and editor for a nationwide publication, in the plaintiff's home state of California. 456 U.S. at 785-86, 104 S. Ct. at 1484-85. The Supreme Court found that defendants'

5

allegedly libelous conduct involved contacts with California sufficient to sustain personal jurisdiction because the article concerned the plaintiff's California activities, it impugned her professionalism when her career was based in California, it was drawn on California sources, and the brunt of the emotional and reputational harm to the plaintiff was suffered in California. *Id.* at 788-789, 104 S. Ct. at 1486. The Court noted specifically that the defendants knew that the brunt of injury would be felt in California because the plaintiff lived and worked there and because their publication had its largest circulation there. *Id.* at 789-90, 104 S. Ct. at 1487.

In this case, as in *Calder*, it is clear that defendants knew or should have known that the brunt of the injury to plaintiff would be felt in the forum state, because RBC is a Louisiana business with financial operations centered in New Orleans. Rec. Doc. 25-1, ¶¶ 4, 6, 10. The Court can infer defendant's awareness of these facts, based on their having dealt with RBC during negotiation of the asset purchase agreement. *Id.*, ¶¶ 12-13.

The higher hurdle for RBC is showing that defendants expressly aimed their tortious conduct at not only RBC but the forum state as well. *Calder* itself is a poor guidepost for this determination in this case because it involved a claim of libel; the torts alleged here are qualitatively different.

On several occasions, the Fifth Circuit has translated the *Calder* test to claims of intentional interference with commercial relationships. Under such circumstances, the Fifth Circuit has held that a court should "determine whether the alleged tortfeasor expressly aimed his out-of-state conduct at the forum state by examining the nexus between the forum and the injured . . . relationship." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 402 (5th Cir. 2009). The cases show that where the relationships interfered with are connected with the forum state personal jurisdiction is satisfied. *Compare id.* at 389-95, 402 (finding jurisdiction in Texas over

shareholder that approved transaction which rendered company unable to pay plaintiff for purchase of Texas property that was expressly governed by Texas law), *and Central Freight Lines, Inc. v. APA Transport Corp.*, 322 F.3d 376, 379 (5th Cir. 2003) (finding specific personal jurisdiction because defendant was alleged to have committed "intentional torts that were purposefully directed at [plaintiff's] contractual business relationship with another Texas entity."); *with Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001) (per curiam) (defendant's divestment of assets pledged by Texas resident in finance agreements did not create personal jurisdiction in Texas because agreements "are not governed by Texas law, are not to be performed in Texas, and have no relation to Texas other than the fortuity that Appellants reside there.") *and Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 765 (5th Cir. 1988) (finding that Texas lacked jurisdiction over claim of tortious interference with stock purchase agreement because the agreement had no connection to Texas).

Here, although RBC seeks damages for conversion in addition to tortious interference, the Court believes that the forum-nexus test is appropriate for all of RBC's claims.  RBC alleges that defendants' conversion of property was the means by which they interfered with its commercial relationships. *See* Rec. Doc. 1, ¶¶ XXXIII-L. Accepting RBC's allegations as true, the sole purpose of the conversion was to prevent RBC from realizing its revenue from, and damage its relationship with, customers that used the Lockbox Account. *Id.* Assuming this purpose guided defendants' behavior, it is the one that the Court should consider in determining the forum to which defendants expressly aimed their tortious conduct.

Applying these principles to the facts of this case, the Court finds that RBC has made out a *prima facie* case that defendants expressly aimed their conduct at Louisiana. Unlike the plaintiffs' chosen forum in *Southmark Corp.* and *Panda Brandywine*, Louisiana is not merely

where RBC resides and where it foreseeably suffered economic injury from defendants' conduct. New Orleans, Louisiana is the location of Republic's one and only business office and the location of the Wells Fargo branch where plaintiff's accounts and treasury were held and managed. Rec. Doc. 25-1, ¶¶ 4, 10. Again, the Court can infer defendants' knowledge of these facts from their participation in the asset purchase negotiations. *Id.*, ¶¶ 12-13; *see also* Rec. Doc. 3-5, § 6.4, 6.13 (asset purchase agreement requiring notices and payments to be addressed to RBC's lone office).

It follows that New Orleans is the location from which RBC serviced or expected to service the factoring accounts that it received in the purchase agreement from GCS. New Orleans is the place where RBC would decide whether to extend Lockbox Account customers additional lines of credit and from which checks would issue to those customers based on their accounts receivable. Although no choice-of-law provision in the factoring agreements has been brought to the Court's attention, the fact that RBC conducted its factoring business from within Louisiana renders it subject to consumer protection regulations from within the state. *See* La. Rev. Stat. § 51:1407(A).

Moreover, RBC has alleged that at least one of the accounts acquired with the Lockbox Account was that of a Louisiana limited liability company with its place of business in Gonzales, Louisiana. Rec. Doc. 25-1, ¶ 15. This fact brings the case in line with *Central Freight Lines, Inc. v. APA Transport Corp.*, in which a Texas freight-delivery company, sued its New Jersey-based shipping partner, tortious interference with its nationwide shipping agreement with Dell Computers, a Texas entity. 322 F.3d at 379. Although defendant had allegedly held freight hostage and manipulated freight prices in New Jersey, the Fifth Circuit found specific personal jurisdiction in Texas based on defendant's behavior having intended consequences for plaintiff's

8

Texas-based relationship with Dell. *Id.* at 384. Here too, RBC points to a relationship with a Louisiana entity damaged by defendants' alleged conduct.

The Court recognizes that *Central Freight Lines* is distinguishable insofar as it involved a single relationship with a Texan business, and this case involves many with customers from potentially many states. The fairness of haling defendants into Louisiana court based on a single Louisiana account might be rightly called into question, if there were no other tie to the jurisdiction. On the other hand, defendants arguably directed their conduct toward every jurisdiction in which RBC's Lockbox Account customers were based, making Louisiana one of potentially several appropriate jurisdictions for efficient resolution of this matter. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777-78, 104 S. Ct. 1473, 1480, 79 L. Ed. 2d 790 (1984). In any case, RBC's affidavit makes clear that New Orleans, Louisiana is the only location from which it conducted the business that defendants allegedly attempted to undermine through their conduct.

In light of the foregoing, personal jurisdiction is proper over defendants. Because the Court finds specific personal jurisdiction, it need not address the parties arguments for general personal jurisdiction.

2. *Fair Play and Substantial Justice*

Although RBC has shown the minimum contacts required to support specific personal jurisdiction, the Court must nevertheless dismiss the case if, on balance, the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *Cent. Freight Lines Inc.*, 322 F.3d at 380-81. As stated above, the defendant bears the burden on this inquiry. *Id.* at 384. To reach this determination, a court must consider the burden on the defendant, the forum state's interests in the suit, the plaintiff's interest in convenient and effective relief, the

judicial system's interest in efficient resolution of controversies, and the states' shared interest in furthering fundamental social policies. *Id.*

Defendants fail to identify any specific burden on them from having to defend this suit in Louisiana. *See* Rec. Doc. 3-3 at 8. The Court will not speculate as to expenses or other burdens in the absence of an actual showing by defendants. The Court also notes that GFC agreed to New Orleans, Louisiana as the place of closing in the asset purchase agreement. Rec. Doc. 3-5, § 1.6.

Defendants argue that Louisiana has no valid interest in this litigation, given that RBC agreed to binding clauses naming Dallas, Texas as the exclusive forum for this dispute, and Texas law as the exclusive law governing this case. Rec. Doc. 3-3 at 8. They further argue that efficiency would be best promoted by adjudication of this matter in Texas, in light of the fact that Texas law applies to this controversy. Rec. Doc. 3-3 at 8. Section 6.8 of the asset purchase agreement provides: "This Agreement shall be governed and construed in accordance with the laws of the State of Texas without regard to any applicable principles of conflicts of law. Any dispute arising out of or relating to this Agreement shall be filed in Federal or State Court in Dallas County, Texas." Rec. Doc. 3-5, § 6.8. As explained below, defendants' argument rests on flawed assumptions about the applicability and significance of these provisions.

First, no party argues that the asset purchase agreement binds RBC to GreyCo. Although this does not absolutely bar GreyCo from invoking its provisions, *see, e.g.*, *Dos Santos v. Bell Helicopter Textron, Inc. Dist.*, 651 F. Supp. 2d 550, 554-56 (N.D. Tex. 2009) (holding that defendant, as third-party beneficiary, may invoke forum selection clause of contract to which it

was not signatory), defendants have made no showing that GreyCo should get the benefit of the contract despite its lack of contractual privity.[2]

Second, the choice-of-law provision cited by defendants only purports to bind the parties in terms of which law governs the contract and applies to its construction. Rec. Doc. 3-5, § 6.8. In this regard, it is narrower than the forum selection clause that it precedes. Notably, it does not purport to govern all claims arising out of the parties' contractual relationship. Therefore, the claims raised in this complaint are subject to normal choice-of-law analysis. *See, e.g.*, *Caton v. Leach Corp.*, 896 F.2d 939, 943 & n.3 (5th Cir. 1990) ("The parties' narrow choice of law clause does not address the entirety of the parties' relationship, however, and hence does not end our inquiry."). "Federal courts sitting in diversity must apply the choice-of-laws provisions of the state in which they sit." *Cain v. Altec Indus., Inc.*, 236 F. App'x 965, 967 (5th Cir. 2007). Louisiana's choice-of-law rule requires a court to balance the state policies implicated by the case. La. Civ. Code art. 3542. Although, in this regard, the inquiry is similar to the fair play and substantial justice analysis that the Court must undertake for purposes of due process, it would be unfair for the Court to attempt to decide which law should apply under the Louisiana rule, when the parties have not had a fair opportunity to brief the issue. It suffices to state at this time that defendants have not shown that the choice-of-law clause in the asset purchase agreement renders resolution of this matter unfair or inefficient in Louisiana.

Third, assuming that the more expansive language of the forum selection clause applies to RBC's claims in this case, there is no precedent for the idea that it would divest the forum state of any possible interest in the litigation. In general, the Fifth Circuit does not treat the existence of a

---

[2]The Court also notes that the asset purchase agreement purports to foreclose the possibility of third-party beneficiaries. Rec. Doc. 3-5, § 6.7.

11

forum selection clause as an issue bearing on personal jurisdiction. *Cf. Haynsworth v. The Corp.*, 121 F.3d 956, 961 (5th Cir. 1997) (observing that forum selection clause could be the basis for motion to dismiss for lack of subject matter jurisdiction, improper venue, or failure to state a claim).[3] The purpose of analyzing minimum contacts to determine foreseeability of out-of-state litigation might be defeated if such contacts could be disclaimed by simple agreement of the parties. The fairness concerns raised by a party being haled into court against its will and in breach of contract, even if they rise to a constitutional level, are accounted for in other procedural devices that the courts have deemed appropriate for forum selection clause enforcement.[4]

Defendants finally argue that efficiency counsels in favor of consolidating the above-captioned matter with a related matter currently pending in the Northern District of Texas. Rec. Doc. 31-2 at 5-6. However, defendants admit that the Texas action was filed later in time. Rec. Doc. 3-3 at 2. The first-to-file rule typically weighs toward resolution of all potential controversies in the first filed forum. *Central Freight Lines Inc.*, 322 F.3d at 384. In this case, the forum-selection clause in the purchase and sale agreement may render such an outcome impossible. Nevertheless, the Court is not persuaded that assertion of jurisdiction in this case,

---

[3] As discussed *infra*, the Supreme Court recently held that forum selection clauses are not a proper foundation for motions to dismiss for improper venue. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. __, __, 134 S. Ct. 568, 577 (2013). The Court expressly declined to decide whether Rule 12(b)(6) was a proper avenue of enforcement for such clauses. *Id.*

[4] The Court will not construe this motion as one to dismiss for lack of subject matter jurisdiction or failure to state a claim because different standards of review apply to such motions, *compare, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955, 1959 (2007) (describing 12(b)(6) standard) *and Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (describing 12(b)(1) standard) *with Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482 (describing 12(b)(2) standard), and plaintiffs have not had an opportunity to provide an opposition addressed to those standards.

despite a related but later-filed action, would offend traditional notions of fair play and substantial justice. Accordingly, it does not appear that jurisdiction in this case would be unfair and unreasonable.

B. Venue

A motion to dismiss for "improper" venue pursuant to Rule 12(b)(3) or "wrong" venue pursuant to 28 U.S.C. § 1406(a) should be granted when venue is not supported by 28 U.S.C. § 1391. *Atl. Marine Const. Co., Inc.*, 571 U.S. at __, 134 S. Ct. at 577. Under 28 U.S.C. § 1391(b), venue is proper in a district: (1) "in which any defendant resides, if all defendants are residents of the State in which the district is located;" (2) "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;" or (3) "in which any defendant is subject to the court's personal jurisdiction with respect to such action" "if there is no district in which an action may otherwise be brought as provided in [§ 1391]." For purposes of venue analysis, a business entity is "deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction." 28 U.S.C. § 1391(c)(2).

As discussed above, the plaintiff has alleged sufficient facts to warrant an assertion of personal jurisdiction. Therefore, Louisiana residency under 28 U.S.C. § 1391(c)(2) and venue under § 1391(b)(1) are satisfied. The Court need not consider RBC's alternative argument that a substantial portion of the events and omissions giving rise to this claim took place in this district.

Finally, defendants argue, notwithstanding § 1391, that venue is wrong or improper because of the forum selection clause negotiated by the parties. Rec. Doc. 3-3 at 10-13. Plaintiff contends that this provision does not apply to the tortious activity alleged in the complaint. Rec. Doc. 25 at 14-16. The Court need not delve into this matter because the Supreme Court's opinion

13

in *Atlantic Marine Construction* states unequivocally that forum selection clauses cannot be enforced via motion under Rule 12(b)(3) or 28 U.S.C. § 1406(a). 571 U.S. __, __, 134 S. Ct. at 577.

The defendant has not requested transfer under 28 U.S.C. § 1404(a), which the Supreme Court deemed proper for enforcement of a forum selection clause that points to another federal district. *Id.* at __, 134 S. Ct. at 579. The Court will not construe defendants' alternative motion to transfer for improper venue under § 1406(a) as a motion to transfer under § 1404(a) because the parties have submitted their respective arguments under the § 1404(a) standard articulated in *Atlantic Marine Construction*. *See id.* at __-__, 134 S. Ct. at 581-83.

Accordingly,

IT IS ORDERED that defendants' Motion to Dismiss for Lack of Personal Jurisdiction or Improper Venue or in the Alternative to Transfer Venue is DENIED. Rec. Doc. 3.

New Orleans, Louisiana, this 10th day of January, 2014

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**